Number 172131 Margaret Lee v. Conagra Brands, Inc. May I proceed? Good morning. Patrick Volody on behalf of the appellant Margaret Lee. I'd like to reserve two minutes for rebuttal. Yes. May it please the court, this is a straightforward consumer deception case under Chapter 93A. The facts are simple. The defendant prominently labeled their Wesson oil product as being 100% natural, but this label was false because the product contained unnatural ingredients, specifically GMOs. It's important that in plaintiff's complaint she alleges detailed allegations, including independent consumer research, confirming that consumers broadly understand the words 100% natural or other general natural descriptors to mean, among other things, that a product is free of GMOs. And plaintiff's also alleged detailed independent support that this information is important and material to consumers. Are you, are you, you're still under 93A, so you want an adjudication at the end of the day that there's something about the label that violates 93A? That's correct, Your Honor. What, that ruling that this aspect of it violates the label, do you Our position is that federal law has not yet addressed one way or the other whether the word natural is deceptive when a product contains GMOs. I think it's important to note that in 2009. So it sounds like you're saying that it is not identical to any federal requirement. Right. Our position is that the term natural has not been regulated by any federal authority or any federal law. It's essentially an unregulated term under federal law. Should we view it as either a nutritional statement or a health-related statement? I think more accurately it's a statement about the product's contents and ingredients. The plaintiff's claim does not turn on or require proof of some nutritional difference between products that contain GMOs and products that don't contain GMOs. The SJC has made very clear in describing the concept of economic injury under Chapter 93A that the key question for deceptive acts under 93A is one of economic injury. And that is, is there some difference in value between the product that was represented and the product that was actually delivered to the consumer? And that's essentially a question of consumer value, not necessarily of nutritional value. So these kind of scientific issues about these debates among scientists about whether GMOs are better or not better, better or worse than foods not containing GMOs are kind of beside the points for the specific 93A claim that we make. I follow that. In fact, I would have thought that would have been the law. So tell me how it is that our case in rule and then the subsequent SJC cases that seem to endorse rule don't change that? Well, the Supreme Judicial Court established in Aspinall that a plaintiff states a claim for injury when a plaintiff alleges benefit of the bargain damages. And benefit of the bargain damages in a consumer deception case are simply that there's some difference in value between the product as it was represented by the defendant and the product that was actually delivered. And nothing in rule overruled that ruling in Aspinall. And in fact, there have affirmed that same principle. Notably, the Aspinall case itself, after rule, went to trial and withstood more injury. I thought rule said, well, there's no allegation or at least no proof that the latent defect ended up hurting the, I guess it was a dog in that case, but hurting the consumer. And then following, and so rule says you're out under 93A. You don't have the kind of injury that you need to have to bring a private cause of action. And then Bellarmine and Tyler seem to endorse rule. So tell me what I'm missing here. Well, I think rule was in the specific context of a defect claim. And rule did not focus on the question of a consumer deception claim where there was some product that was represented to have some characteristic. But then that product ultimately delivered did not have that characteristic. And I think this court's decision in Shawless clarified this point. And I understand the court in Shawless affirmed a dismissal, but the court in Shawless made very clear that the key element that was missing in that case was that the plaintiff failed to allege that the defendant failed to deliver a bargain for characteristic. And had the plaintiff alleged that the defendant failed to deliver a bargain for characteristic of the product, which in that case was a sweater, then the plaintiff would have served in an injury, assuming there's some difference in value between what was represented and what was actually delivered. And I do think that has been clarified in Shawless. And Shawless directly supports the injury element here. So I think I may have led you away from Judge Kayada's question. The argument that catches my attention from the other side is 343-1, in which there you have a statement that no state shall pass any rule or authority as to any food and interstate commerce. And then it lists a whole bunch of things, and they all begin with basically any requirement for such and such that is not identical to the federal law. And you are advocating that we adopt a rule that would not be identical to the federal law. So it seems to me you need to show that you're not in any of the categories of federal law that I'm not quite understanding what it is. I think the context of that law, Your Honor, is where the FDA has taken action, where the FDA has imposed a labeling requirement. The state cannot impose a labeling requirement that's different than the labeling requirement that the FDA has imposed. That would be the case if we were just dealing with conflict preemption. But here we've got a statute that provides express preemption that basically says if you're in one of these subcategories, and there's five or six of them, I think, then you can't have anything that's different than the federal law. It's got to be identical. So it leaves to state courts the ability to enforce the federal requirements, but not to create their own requirements if they fall into one of these categories. It wasn't clear to me from the other side's brief which category they're saying you fall into. That's why I'm asking you, how do you get out of all of the categories? Right. And again, the important point here is that statute presupposes that the FDA has actually imposed a labeling requirement. When the FDA has not taken action, then there's no FDA action that can preempt state law. Then you're not identical to an FDA rule. There's no FDA regulation or rule or guidance or anything that addresses the particular labeling here at issue one way or the other. So in the absence of any FDA regulation, there's nothing that can preempt state law that requires that the label be non-deceptive. And I should mention, however, there are things that the FDA has said that are completely consistent with plaintiff's claim. The FDA has gone out of its way to caution food companies not to mislead consumers into believing the products are free of GMOs. I'm still not sure you're coming to grips with, you know, this section is labeled National Uniform Nutrition Labeling. Now, we don't go totally with the title of the section, but that's what it's getting at. It's establishing a uniformity, not a just no conflict. So it says if the federal law says you have to mention beets, then you have to mention beets. But if it says, doesn't say carrots, then you can't pass a rule that says you have to mention carrots. Right. Well, I think the important point, if I may just finish on this particular issue, is that the plaintiff's claim here does not seek to impose any labeling requirement. And let me make that very clear, that plaintiff does not seek as a form of relief and has not requested it. Well, that clearly can't be right. You want us to say that 93A could be held to prevent someone on the label from saying they're all natural if the food contains GMOs that aren't otherwise disclosed. Right. That's a labeling requirement. I respectfully disagree, Your Honor. I think there's a difference between imposing an affirmative labeling obligation that's inconsistent with something the FDA has required. Well, sure. And I think the courts have drawn this distinction, and particularly the court in Braceno dealing with the exact same labels that are at issue here and the exact same arguments. The court and all the courts who have addressed this issue other than the district court have drawn a distinction between an attempt to impose an affirmative labeling requirement and a challenge to the truthfulness or misleading nature of a label that the defendant chose to place on their product. In addition, can I ask how it is that we haven't heard anything about the National Bioengineered Food Disclosure Act in this case? Yes, Your Honor. I think the short answer is that, and the defendants presumably recognize this, is that it simply didn't change anything. That act simply ratified the FDA's decision not to impose a universal labeling requirement for GMO foods. And again here, plaintiff is not attempting or arguing or seeking relief to impose any such labeling requirement. Rather, the plaintiff's entire theory of the case is that the defendant should not mislead consumers into believing that products are free of GMOs when they in fact contain GMOs. Thank you. May it please the Court, I'm Angela Spivey. I'm here on behalf of ConAqua Brands. Plaintiff's subjective belief that the use of bioengineering seeds renders the plant or the crop that grows from that seed artificial or synthetic is contrary to 25 years of published FDA policy. Taking two natural things here, either a soybean seed or a corn seed. But we're not here to sort of look at some amorphous policy. I think you've got an argument that there's some express preemption here under federal law, if I understand your brief. Yes. So what exactly is it? You point us towards the very end of your brief. You mentioned 343-1, the National Uniform Nutrition Labeling. In what language is it in that that you say provides your express preemption? The NLEA prohibits states from imposing food labeling requirements that are not identical, quote, not identical to the NLEA. Well, it actually doesn't say that. It says you can't have any retirement that, and then it lists some specific retirements, but it doesn't just say everything in the world. That are not identical. So states cannot enact laws that require or require additional labeling requirements that are not required by the FDA. So, for example, it says you can't have a nutrition labeling of food that is not identical to the requirement of Section 343-Q. So do you say that this is a nutrition labeling requirement that is not identical to the requirement of 343-Q? Requiring, the plaintiff seeks injunctive relief. They either seek the injunctive relief to require that ConAgra disclose the GE content in the Wesson oil, or that it be prohibited from using a natural claim on its label because the product arguably is derived from bioengineered seeds. Either one of those imposes a labeling requirement that is not imposed by the FDA. Therefore, it's the state... Coming back to you saying generally by the FDA, the statute doesn't say that, that you're relying on. It refers us to particular sections of the Act, such as 343-Q. And I haven't heard, I couldn't find in your position anywhere in your brief, whether you're saying that this is a, one of the requirements that would be in 343-Q, and therefore it's not identical, so you lose. Or are you saying that it's other type than 343-B, D, F, H, I, or K? There's no argument in your brief on any of those. So we believe, and in the brief we have argued, that this requirement that the plaintiff is trying to seek to impose here requires labeling that's not identical. It's an additional labeling requirement that is not imposed by the NLEA or the FDCA, the Food, Drug, and Cosmetic Act, Section 201N. And because of that, it is preempted. But we don't even need to get to the preemption argument here, because plaintiff's claim fails as a matter of law to meet the required elements of Chapter 93A under unfair or deceptive claims. So you not, you not even get to the preemption part, because as a matter of law, as the district court points out, you failed, she fails to allege facts that arise to that. As FDA has repeatedly pointed out, the oil that is generated from plants from bioengineered seeds is absolutely scientifically indistinguishable from the oil that the plaintiff would contend is natural, from non-bioengineered seeds. But in paragraph, on the injury point, paragraphs 44 and 48 of the complaint contain a specific allegation that GMO products have less value in the marketplace and that customers pay a premium for products that are all natural, which they construe to mean non-GMO. We have to take that allegation for purposes of Rule 12 as correct. So there's your injury. Someone pawned off something as a premium product that wasn't a premium product. The person therefore paid a premium price for something that wasn't a premium product. If we assume that's true, isn't that flat-out injury? No. Plaintiff never alleges in the complaint that there was a cheaper option. Plaintiff never alleges there was a cheaper product they could have bought. They never allege they chose to pay more for Wesson Oil because it had a natural plant. They said they did pay more. They bought a premium product that was advertised as such. They never allege that there was a cheaper alternative to purchase. But they don't have to. Why would they have to allege that in a complaint? Because if you look at the Ferreira case, which is from Massachusetts District Court, it says, rejecting the price premium theory for injury, says, No Massachusetts case has ever found an injury under Chapter 93A under such circumstances where the alleged injury was based entirely on plaintiff's subjective belief as to the nature of the value of what she received. But they don't say that you're running away from the complaint. They say that actually there's a consumer polling that shows over half of all consumers have this view. I think we're complaining two different things here. The consumer survey that they point to says that 64% of consumers, when they see a natural label, may interpret that to be non-GMO. That has not anything to do with the injury claim or the injury prompt or any allegation on the injury side. What about the factual allegation that they make that it is sold as a premium product? They made no allegation that there was any cheaper alternative or that the Wesson Oil did not perform as well or identical or performed worse than a non-bioengineered seed oil. They made no allegation of that. This case is analogous to the Freire case where the entire premise of deception and injury is based upon plaintiff's subjective belief that the use of bioengineering seeds somehow rendered the oil that resulted from that product synthetic or not natural. That is contrary to 25 years of the FBA scientific policy on this. Taking two natural things here, a corn seed or a soybean seed, and grafting it with a naturally occurring beneficial bacteria, similar to what you might take in probiotic, and planting that seed in the ground and letting it grow does not render that oil unnatural. In fact, the FBA has said it is genetically indistinguishable. There is no DNA of genetic material in the resulting oil. There is no difference how people have injury. As I read some of the stuff that you put in the record from the FDA, it seemed to me that they were sort of struggling with this issue and that they hadn't reached a point, reached a decision on it. And it also seemed like when they talked about this recombinant making of seeds and things like that, that you can actually create a product that it does have negative effects. In other words, it takes the wrong gene that predominates and you end up with something that is either not as nutritional or actually could be dangerous. And so as I was reading this, I was thinking it seems a bit of an overstatement to say that there is no difference. It is product by product and it depends on whether the testing has been done. And it seemed to me from the stuff you submitted. So the FDA has left open that there could be some genetic engineering that does lead to a different product. But in this case, it has it. And as the example the FDA used when it submitted a comment to Congress on the bioengineering labeling rules that you were referring to a few minutes ago with USDA, the FDA used as an example soybean oil. It said there is no DNA of genetic material in soybean oil. It is indistinguishable from soybean oil that was derived from non-bioengineered seeds. This is vegetable oil, right? Yes. So it could have soybean oil, it could have corn oil, it could have palm oil, whatever. And in all of them, they are indistinguishable. There is no DNA of the genetic material. There is no genetic material bioengineering in the finished product. So the real question would be whether the plaintiff has alleged that it is different in any way. Isn't that right? I mean, whether or not you can come here and say that it is or isn't, that is outside what we are supposed to be looking at. I would argue no for two reasons, if I could. The plaintiff has to plead facts that are sufficient to pass a muster on the 93A chapter. Two prongs. The unfair prong. Well, to be unfair, the Massachusetts... He is not saying unfair. He is saying deceptive. Okay. To be deceptive. Let's skip to deceptive. The Massachusetts legislature has chosen to defer to the scientific knowledge of the FDA in interpreting what acts are deceptive. The exact language of 93A says you have to look, the courts have to look to the FTCA to determine whether an act or a claim is deceptive. The FTCA sets forth a two-prong test for determining deception. One, is it likely to mislead a reasonable consumer? And they have to meet the second prong, which is materiality. And the FDA has explicitly deferred to the FDA on what is material. The Food, Drug, and Cosmetic Act provides that labeling is deceptive if it fails to reveal facts that are material in light of the representations on the label. So both the FTC and the FDA require that a claim be material in order to be deceptive. It has to meet that second prong. And to meet that second prong, we have the FDA for 25 years who has said unapologetically that the use of bioengineering seeds is not material. I will point you to 1992 where the FDA said that. In 1993, they said, quote, use of bioengineering is not material due to representations on the label. In 2001, and then again in 2015, they make the same representation. But in 2015, the FDA tracks the exact language of the FTCA. Isn't that though for materiality, for determining whether there should be an affirmative obligation to disclose its presence in the food? No. The materiality goes to the second standard. The FTCA plays out a two-prong test to determine if a claim left out. I'm talking about the FDA's finding on materiality. It has said that the use of bioengineering is absolutely not material with regard in reference to FTCA, with regard to claims and labels, claims on the label. It has said it's not material. I don't know how many other ways FDA could say that the use of bioengineering is not material, which means as a matter of law, because the Massachusetts legislature chose to defer to the FTCA and chose to defer to the FDA on this, we have to implement that two-prong test. And it fails as a matter of law because FDA has said equivocally it is not material. Now, it's not our position that in order to meet this deception standard, you have to have the FDA say something is material. But rather, if the FDA were silent on a claim, whether it's material or not, then it would be up to the court to determine if it's deceptive. But the Massachusetts legislature has dictated that the courts look to the FDA and incorporate the FDA's scientific knowledge here. And for 25 years, the FDA has consistently said the use of bioengineering is not material. So can you tell me why 71639I has not come up in this case yet? No. I'm sorry, I don't really have a good answer for that one. Well, should it have? That's the Massachusetts definition. No, I'm sorry, the National Bioengineering. The National Bioengineering standards aren't material to the case, and as I agree with my opponent here, won't have an impact here. The USDA was charged by Congress to come up with labeling requirements so they'd be consistent for genetically engineered products. For three reasons it will have no impact. One, the USDA does not make any opinion or statement regarding the materiality of bioengineering. So again, Massachusetts legislature defers to the FDA on whether it's material. Let me read the preemption section so that you know what I'm talking about, because I'm still confused. No state or political subdivision of a state may directly or indirectly establish under any authority or continue in effect as to any food or seed in interstate commerce any requirement relating to the labeling of whether a food or seed is genetically engineered. And then it goes on. So the USDA regulations that we have a proposed rule now, it's not been finalized yet, it won't affect the analysis of whether this claim is unfair, because to be unfair it has to conflict with FDA policy on natural. Her claim is that she wants it labeled or it shouldn't be sold unless the truth is told. She wants to be able to bargain with the truth facts in front of her. Correct. Doesn't this preempt any state from requiring such a thing? Yes, we do believe there's preemption. Then why hasn't it been raised? Because I think the preemption is under the standard that the FDA has set forth the labeling guidelines. So it's connable's position we can just ignore that statute that the judge is talking about? No, I'm not saying ignore the statute. But nobody cited it to us, and I'm trying to understand why not. I don't even think we have to get to the preemption argument here, because as the complaint is pled, we fail to state a claim as a matter of law. So the other side said that your answer would be that it's irrelevant. Not that you don't need to get to it, but that it's irrelevant. So do you agree with that assertion? No, I think it's irrelevant to the assessment of whether the natural claim is unfair or deceptive. It's irrelevant to that assessment, because it... Right, right, we're talking about preemption here. Right, but as far as preemption goes, no, I don't think it's irrelevant for that. So how come it hasn't been raised? I don't know why. Well, the published rule, the guidance didn't come out until after the fact. This is a statute. It's a preemption statute. I'm not sure why it wasn't raised. Okay, that's all I'm looking for. I'm sorry. I'm just trying to understand. Okay, thank you. Your Honor, the one key point I have to clarify, based on something Judge Howard said a few minutes ago, I believe Your Honor said something to the effect of she referring to the plaintiff wants it labeled or wants the truth to be told. And I want to be very clear about what plaintiff's claim is and what plaintiff's claim is not. Plaintiff has never alleged that the defendant should be required to disclose the presence of GMOs. Plaintiff has not made that allegation. Plaintiff has not sought that relief. Plaintiff's complaint includes no account for injunctive relief. The sole question raised by plaintiff's complaint is whether it's deceptive for the defendant to call this product 100% natural when that statement is false. Is there any allegation that this particular oil is materially different from non-GMO oil? Do you have an allegation to that effect? This goes back to the issue we discussed at the outset of the first part of my argument in that the relevant question under Chapter 93A is economic value. And that economic value is driven by consumers, what value consumers attach to various attributes or ingredients of a product. It may be that some people might criticize consumers for not being completely rational, for assigning a value to an attribute of a product that's not nutritionally significant. But the case law under Chapter 93A is very clear that where you assert an economic injury in the form of benefit of the bargain damages, the relevant question is the difference in economic worth. That's the phrase that the SJC uses in Aspinall. A difference between the economic worth of the product as it was represented and the product as it was delivered. And that's ultimately a question of the value consumers assign to the product, not necessarily in some more abstract or general sense of the nutritional or scientific value of a different product. So it doesn't need to be materially different? It will not be part of plaintiff's required proof to prove her claim to establish any scientific or nutritional difference between GMO and non-GMO products. And if I may just finish on that point. May I say one more thing on that point? Yes. And again here, if a plaintiff proves benefit of the bargain damages that products represented to be free of GMOs or by implication, by saying all natural, are more valuable and have a greater market value than products that actually contain GMOs, then the plaintiff will have proved injury, she'll have proved damages, and she'll have proved her claim. And unless the Court has any further questions, I'm happy to rest. Thank you. Thank you.